UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BASEL SALAMA HILS,<br><br>    Petitioner,<br><br> v.<br><br>KRISTI NOEM, et al.,<br><br>    Respondent. | CASE NO. 2:25-cv-02336-TL-BAT<br><br>**REPORT AND RECOMMENDATION** |

  Petitioner filed a 28 U.S.C. § 2241 habeas petition contending he was impermissibly detained without notice or a hearing and removal to a "home" county is not reasonably foreseeable, and any attempt to remove him to a third country is unlawful. He requests the Court order Respondents to: (1) immediately release him from immigration detention; (2) comply with all revocation of release procedures and to secure a travel date to repatriate him to Jordan or the United Arab Emirates before redetaining him; and (3) not remove him to a third country; and (4) award reasonable attorney fees and costs. Dkt. 1 (petition).

  Respondents disagree and argue Petitioner is subject to a final order of removal, is lawfully detained, Ice is working on obtaining travel documents from Jordan, and the law permits ICE to remove Petitioner to a third country and if third country removal is sought, Petitioner will be afforded prior notice and the opportunity to submit a fear claim. Dkt. 6

REPORT AND RECOMMENDATION - 1

For the reasons below, the Court recommends GRANTING the petition and ORDERING Respondents to immediately release Petitioner, and not removed him to a third county without notice and the opportunity to raise a fear claim.

## BACKGROUND

Petitioner was born in the United Arab Emirates (UAE) and has a Jordanian passport, but because he is a Palestinian is "stateless." *See* Dkt. 1 (exhibit at 4). He was admitted to the United States in 1993 and was ordered removed to Jordan or the UAE in 1995. Dkt. 7 (deportation officer). In April 2004 Petitioner was arrested and convicted in Montana for making false statements. He avers he was released from criminal custody around the end of December 2024 and taken into ICE custody and was in immigration custody until ICE released him on May 3, 2005. Dkt. 9 Reply (Hils declaration). Petitioner was released on an order of supervision (OSUP). Additionally, Respondent avers the Jordanian Embassy denied ICE's request for a travel document in late May, 2005.

In 2021 ICE cancelled Petitioner's OSUP and directed him to keep them informed of his residence and phone number. In September 2025, Respondents denied Petitioner's application to register as qualifying alien, arrested him on October 10, 2025, and detained him at the Northwest ICE Processing Center (NWICP). On December 26, 2025, Respondents sent a request for a travel document to the Jordanian Embassy, and indicate they plan to send a travel document request to the UAE. Respondents aver that if Jordan or the UAE decline to issue a travel document, they will attempt to remove Petitioner to Palestine where his parents were born.

## DISCUSSION

Plaintiff contends he is detained in violation of the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable under *Zadvydas v. Davis*,

533 U.S. 678 (2001). *See* Dkt. 1 at 3. The government disagrees and claims Petitioner's removal is reasonably foreseeable. There is no dispute Petitioner is detained under 8 U.S.C. § 1231. Under § 1231, the government must detain a noncitizen during the 90 days following the entry of the removal order, during which time ICE attempts removal. 8 U.S.C. § 1231(a)(2)(A). A final order of removal was issued in 1995, Petitioner was detained in 2005, released in 2005 and redetained in October 2025; the 90-day removal period has obviously expired. As the 90 days has passed, the government may detain the noncitizen or release the noncitizen under supervision. § 1231(a)(6).

Respondents elect to detain Petitioner. While the Respondents may detain a noncitizen, § 1231 "does not permit indefinite detention." *Zadvydas*, 533 U.S. 678 at 689. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Due process requires a noncitizen be detained under § 1231 no longer than "a period reasonably necessary to bring about . . . removal from the United States." *Id.* at 689. Detention is presumptively reasonable for six months after the removal period. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. If the government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

/

/

/

REPORT AND RECOMMENDATION - 3

The record shows the following: Petitioner has been in immigration detention approximately 221 days[1]: December 29, 2004[2] to May 3, 2005 (126 days); and October 10, to the present (95 days).

Petitioner has lived in the United States for over 32 years; Respondents made no effort to remove him for the first twelve years (1993 to 2005); Respondents sought a travel document in 2005, and the Jordanian Embassy denied the request in May 2005; In 2013 Respondents located a travel denial request letter from the UAE but not Jordan; and Respondents thereafter made no effort to remove Petitioner for the next twenty years (2005 to 2025). *See* Dkt. 7 (declaration of immigration officer).

Jordan has not issued a travel document and there is no indication an application has yet been submitted to the UAE. Rather, Respondents aver:

> On December 19, 2025 ERO Tacoma sent the Jordanian TDR to the Jordanian Embassy. ERO intends to submit TDR to the WUA Embassy within one week. It is my understanding that Jordan is cooperating with the US government and is issuing TDs for individuals ordered removed from the United States such as Petitioner.

*Id.*

Respondents' belief Jordan is "cooperating" does not provide a factual basis to conclude it is reasonably likely that Jordan will issue a travel document in the foreseeable future. Jordan declined to do so in the past and Respondents have not provided any basis to conclude that Jordan's has changed. *See Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002) (removal not reasonably foreseeable where government had "not demonstrated . . . that any travel

---

[1] The six months detention period need not be served consecutively, i.e. it does not reset each time the government arrests and releases a noncitizen. *See Nguyen v. Scott*, 796 F.Supp.3d 703, 721-722 (W.D. Wash. Aug. 21, 2025).

[2] The record indicates Petitioner was released toward the end of December 2004.

REPORT AND RECOMMENDATION - 4

documents are in hand, nor have they provided any evidence, or even assurances from the [foreign] government, that travel documents will be issued in a matter of days or weeks or even months"); *Singh v. Whitaker*, 362 F. Supp. 3d 93, 101–02 (W.D.N.Y. 2019) (removal not reasonably foreseeable where government had no specific timeframe for removal and no travel document despite frequent follow-ups with the consulate); *Andreasyan v. Gonzales*, 446 F.Supp.2d 1186, 1189-90 (W.D. Wash. 2006) (finding removal not likely in reasonably foreseeable future when noncitizen detained for eight months and consulate stated only that case was still under review pending a decision).

Moreover, the fact Respondents aver they intended to submit a request for a travel document to the UAE in December 2025 indicates Respondents anticipate that Jordan will not issue a travel document. As with Jordan, Respondent's records show the UAE has also declined to issue a travel document in the past.

Thus, the record before the Court establishes while Respondents aver Petitioner has been subject to a final order of removal for over 32 years ago, the government has made no attempt to remove him during most of that time, both Jordan and the UAE have declined to issue a travel document in the past, and there is no factual basis to presently conclude either country will issue a travel document in the reasonable foreseeable future. The Court thus finds Petitioner has met his burden to show good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.

As Petitioner has met his initial *Zadvydas* burden, the burden shifts to Respondents to rebut Petitioner's showing. Respondents fail to do so. As discussed above, Petitioner has lived in the country for over 32 years, both Jordan and the UAE have declined to issue travel documents in the past and Respondents can only say they believe Jordan is cooperating, which the Court

finds fails to rebut Petitioner's contention his removal not reasonably foreseeable. *See e.g. Huynh v. Bondi*, C25-2371-KKE (W.D. Wash. De. 23, 2025). "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *See Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006).

As Respondents fail to rebut Petitioner's showing, he is entitled to *Zadvydas* habeas relief.

**Due Process and Redetention**

Petitioner contends if this Court orders release, due process requires he be given notice, an opportunity to be heard, and proof he is a flight risk or a danger to community **before** Respondents can redetain him. The Department of Homeland Security is authorized to revoke a noncitizen's bond or parole "at any time," even if the individual was previously released. 8 U.S.C. § 1226(b); 8 C.F.R. § 242.2(c). "[T]he government's discretion to incarcerate non-citizens must comport with the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). The Board of Immigration Appeals has further limited the government's authority: "[W]here a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). In the past, the DHS rearrested and detained individuals only after a "material" change in circumstances. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Here, in making an individualized assessment of Petitioner's circumstances, it appears he asks the Court order Respondents provide him in every circumstance a **predetention** hearing or

REPORT AND RECOMMENDATION - 6

1 determination **before** he can be redetained. However, Respondents are statutorily empowered to
2 redetain a noncitizen who violates a condition of release under 8 C.F.R. § 214.13(i)(l) or on
3 account of changed circumstances such as facts establishing the significant likelihood a
4 noncitizen will be removed in the reasonably foreseeable future. 8 C.F.R.§ 214.13(I)(2).

5     Petitioner's request thus sweeps wide and fails to recognize there are circumstances
6 supporting lawful redetention in his case that do not require a hearing before detention can occur.
7 The Supreme Court in *Zadvydas* recognized this is observing that a noncitizen "may no doubt be
8 returned to custody upon a violation" of release conditions. *Zadvydas*, 533 U.S. 678 at 700. Here,
9 for example, Petitioner has faced redetention following his arrest and conviction for criminal
10 charges. It seems Petitioner's detention without a hearing flowed from the criminal conviction
11 and the fact he is subject to a final order of removal. It would seem if Petitioner was released
12 from immigration custody and again arrested and charged with criminal conduct or failed to
13 abide by conditions of release that there would be grounds to redetain him without a hearing.
14 Further it would also seem if Respondents obtained a travel document to Jordan or the UAE,
15 Respondents could take Petitioner immediately into immigration custody for immediate removal
16 to his home countries without a detention hearing.

17     Thus, the Court declines to grant Petitioner's request which would require a **pre-**
18 **redetention** determination, no matter the circumstances, **before** he could be taken into custody.
19 In declining Petitioner's request for pre-redetention protection, the Court is not foreclosing
20 challenges Petitioner may assert if he were redetained, in violation of the statutory framework,
21 the Administrative Procedures Act, for no legitimate reason, or in violation of due process, or if
22 he faced removal to a third country, and not his home countries.

23     **C.**    **Third Country Removal**

REPORT AND RECOMMENDATION - 7

Petitioner contends Respondents should be barred from removing him to a third country because such removal is impermissibly punitive; additionally, he contends if Respondents pursue removal to a third country, he is entitled to certain procedural protections before such removal occurs. There is no dispute Respondents possess the authority to remove Petitioner to a third country. The dispute revolves around the manner in which third country removal might occur. Petitioner asks for notice and an opportunity to respond if the government should attempt third country removal that includes (1) reopening Petitioner's Section 240 removal proceedings, so an immigration judge may designate a specific country for removal, and (2) providing him with an opportunity to present a claim for deferral of removal as to that country under the Convention Against Torture (CAT).

Respondents contend Petitioner's third country claim is moot or premature because Respondents have implemented policies that provide Petitioner with the relief he requests—notice and a meaningful opportunity to respond to third county removal attempts. Dkt. 6 at 16. Respondents further contend Plaintiff cannot bring an individual third country claim because he is bound by the class action in *D.V.D. v. U.S. Dep't of Homeland Sec.* 786 F.Supp.3d 223 (D. Mass. 2025).

Because Respondents claim their policies are consonant with the relief Petitioner requests, and the requested relief is consistent with the protections set forth in *D.V.D.* the Court recommends granting Petitioners third country claim.

The Court accordingly recommends that Petitioner be given sufficient notice of a third country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation. *See Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288 at 18 (W.D. Wash. Aug. 21, 2025) (citation omitted).

REPORT AND RECOMMENDATION - 8

Due process includes the right to "a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Id.* The due process clause requires the government to "provide a meaningful opportunity to be heard on asylum and withholding claims." *Id.* These requirements "flow directly from binding Ninth Circuit precedent," and to the extent ICE policy contradicts them, it is unlawful. *Id.* at *19 ("It would be impossible to comply both with Ninth Circuit precedent and the policy.").

The Court also notes if the government moves forward with removal to a third country without reopening removal proceedings, disregarding the requirements of due process as laid out in *Nguyen*, 2025 WL 2419288, and the Ninth Circuit precedent upon which it relies, Petitioner would be free to move for injunctive relief, demonstrating his entitlement to an injunction, and the likelihood of irreparable harm.

For the reasons above, Court **RECOMMENDS:**

(1)     Respondents shall release Petitioner from immigration detention on appropriate conditions no later than 24 hours from issuance of an order adopting this report and recommendation.

(2)     Respondents file with the Court a notice confirming Petitioner has been released from immigration detention within 48 hours of issuance of an order adopting this report and recommendation.

(3)     Respondents provide Petitioner three working days (72 hours) notice and the opportunity to respond to any third country removal attempt by providing a reopened removal proceeding before an immigration judge.

(4)     **DENYING** Petitioner's request the Court impose a blanket prohibition on Respondents from redetaining him unless he is first given notice and a hearing. The denial of this

REPORT AND RECOMMENDATION - 9

request for relief does not preclude Petitioner, if redetained to challenge the grounds for such redetention or seeking injunctive relief.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **January 27, 2026.** The Clerk shall note the matter for **January 28, 2026**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 13th day of January, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10